JONES, Circuit Judge,
dissenting:
I respectfully dissent from the panel majority’s holding (and only this holding) that the district court abused its discretion by excluding Bean’s untimely second expert report. The panel majority states the correct legal standards but, in my opinion, misapplies them to the case at hand. The upshot of the majority’s reasoning is to revise and extend the district court’s already generous pretrial discovery order.
Placing the court’s exclusion order in the litigation timeline is critical. On September 16, 2012, Mark Barhanovich died after his boat struck a dredge pipe operated by Bean and the boat’s Suzuki motor catapulted into the boat and hit'him. Six months later, Bean filed a limitation-of-liability action, and Barhanovich’s estate sued Bean. After consolidating the cases, the district court granted Bean leave on April 23, 2014, to file a third-party complaint against Suzuki Motor Corporation (SMC). Later in 2014, Bean filed an amended third-party complaint against SMC. Bean’s complaint demanded indemnification from SMC based on a theory of products liability. On January 2, 2015, SMC filed its answer.
The case was initially set for trial in August 2015, but the district court granted the parties’ requests for extension of discovery-related deadlines six different times, which delayed both the general discovery deadline and the trial date. The court entered its initial case management order on October 16, 2013, scheduling the case for trial on August 3, 2015. On the parties’ requests, it then amended the order on July 17, 2014; August 25, 2014; December 11, 2014; February 4, 2015; March 18, 2015; and July 10, 2015—each time extending discovery-related deadlines. As a result, the overall discovery deadline was August 1, 2015, and the trial was set to occur during a three-week term of court beginning November 30, 2015. Bean did not settle with the Barhanovich family until September 2015.
In the meantime, Bean needed experts to prove up its products-liability claims against SMC. After the district court granted the parties’ requests for extensions of the expert-designation deadlines, Bean’s initial expert-designation deadline was October 20, 2014, and its rebuttal expert-designation deadline was December 5, 2014. Bean timely designated Edward Fritsch as its expert; his report largely took to task Barhanovich for piloting his boat at an excessive speed. As the panel majority note, Fritsch’s initial report “was far from ‘full and complete’ ” and “did not even mention whether the motor suffered from any kind of defect”—the core of a products-liability case. Despite the inadequacy of Fritsch’s initial report, and despite the district court’s demonstrated willingness to extend - expert-designation *376 deadlines, Bean sought no extension of the October and December deadlines.
Then, between July 15 and 30, 2015— two and a half years after Bean initiated this suit, nine months after Bean’s expert-designation deadlines passed, and mere days before the August 1 discovery deadline—Bean made its move. On July 30, Bean filed a second report by Fritsch dated July 15 in opposition to SMC’s motion for summary judgment. As the panel majority agree, Fritsch’s second report contained “largely new” opinions that “clearly relate to Bean’s negligence, failure to warn, and design defect theories.” The distinct court struck this report because it was not filed by Bean’s expert-designation deadlines, “and despite seeking and receiving numerous extensions of other deadlines in this case, Bean has never requested an extension of the deadline for submission of rebuttal experts.” The district court emphasized that “Bean was well aware of the nature of its claims against Suzuki long before these deadlines expired,” and yet, “Bean has proffered no good explanation for why it failed to timely request that its expert disclosure deadline be continued, or that the deadline for submitting rebuttal experts be extended.” In light of Bean’s failure to explain its errors, the district court declined to permit Bean’s “ambush” of SMC and struck the report.
The question presented here is whether the district court’s exclusion of Fritsch’s untimely second report was “a clear abuse of discretion.” Geiserman v. MacDonald, 893 F.2d 787, 790 (5th Cir. 1990). The answer to this question turns in large part on Bean’s explanation for its failure timely to disclose Fritsch’s second report. See id. at 791. In my view, neither Bean’s proffered explanation nor the record can support the holding that the district court clearly abused its discretion.
Bean’s sole excuse for its untimely submission is a red herring. Bean asserts that it did not obtain the discovery documents that undergird Fritsch’s second report until several months after the expert-designation deadlines passed, and without those documents, it was impossible to offer an expert report concerning the Suzuki motor. That conclusion does not follow from Bean’s premise. At most, its premise shows only that at the time of its initial deadlines, Bean could not offer Fritsch’s second report. The documents’ initial unavailability, however, says nothing about Bean’s subsequent delay in disclosing a report based on later-acquired documents or Bean’s failure to request deadline extensions. Bean thus ignores the central issue in this case, which is whether the district court abused its discretion by excluding Fritsch’s second report, not at the time of Bean’s initial expert-designation deadlines but instead after a subsequent nine-month delay.
On this question, three reasons can be elicited from the record in support of the district court’s discretionary decision to exclude the second report. To begin, even viewed in its most favorable light, Bean’s argument concerning the unavailability of SMC’s documents seems disingenuous. Bean had obtained the SMC documents on which Fritsch’s second report was based nearly four months before it produced the report to SMC and the court. Bean’s opening brief admits that “Suzuki ... provide[d] full responses [to Bean’s discovery requests] ... [on] April 6, 2015.” Bean did not file Fritsch’s second report until July 30, 2015. The four-month time gap speaks for itself.
Moreover, the relationship between the documents disclosed on April 6 and the report filed on July 30 is unmistakable. Fritsch’s report emphasizes that “[t]he principal purpose of this report is .to com *377 ment on the Suzuki documents that have been produced in the discovery process since October 2014.” He compared his current analysis to his analysis “[p]rior to Suzuki’s production of its design and test documents.” Fritsch highlighted at least six documents that he found particularly important to his analysis:
• Limited Warranty for 2001 and Later Four Stroke Models, which “specifically lists striking submerged objects as one of the situations not covered by the warranty.”
• Test Standard for Running on Driftwood, which “describes a test protocol by which a Suzuki motor, mounted on a test boat, is subjected to an impact with a moored, floating wooden log of a specified standard length and diameter.”
• Test report SES T 8561, which “describes a series of driftwood tests conducted on the DF225/250 outboard motor during the period from July 1 to August 1, 2003.”
• A “technical reporting memo,” which “indicates that the shock blow setting was 515.4 kgf/cm2 (7,330 psi).”
• Engineering Change Notice 93J-069, which Fritsch described as “[a] document of significant utility.”
• Engineering Change Notice 93J-0668, which Fritsch described as “[ajnother document of interest” and “notable.”
Finally, after surveying the documents, the report transitions to a heading entitled “Calculations Using Information from Suzuki’s Documents.” That section emphasizes the importance of these documents:
The documents produced by Suzuki provide a wealth of dimensional information on the DF225 motor' as well as data on the performance of that motor in the driftwood impact tests conducted by Suzuki in 2003. That dimensional information and test data have provided me with inputs for. a variety of calculations that are relevant to quantify general performance characteristics of the middle unit of the DF225 motor and the probable behavior of that unit in the subject accident. On the pages to follow, a series of seven figures (Figures 6 through 12) are presented to summarize the results of those calculations.
In short, Fritsch’s second report was based on documents that Bean acquired nearly four months before it filed Fritsch’s report with the district court.
It is thus hard to take seriously Bean’s argument that it could not disclose a report without the necessary supporting documents, when even after receiving the crucial documents, Bean waited nearly four months, up to the eve of the close of discovery, to file the report with the court.
Second, Bean never sought to extend its expert-designation deadlines and, as the panel majority concede, Bean “presents no answer to [the] question” why it failed to do so. Bean’s failure to request deadline extensions is curious; Bean clearly knew before the expiration of the deadlines that Fritsch’s initial expert report did not tackle defects in the Suzuki motor or mounting. If for no other reason, Bean knew this because about á month before Bean’s deadline for identifying a rebuttal expert, SMC’s expert’s report stated: “I find no engineering opinions in Fritsch’s report which are critical of the design or construction of the Suzuki outboard motor.” In light of Bean’s obvious failure initially to produce expert evidence against SMC, the district court explained that “Bean has proffered no good explanation for why it failed to timely request that its expert disclosure deadline be continued, or that the deadline for submitting rebuttal experts be extended.” Even in its briefing to this court, Bean provides no such explana *378 tion. Its failure to do so surely does not weigh- in favor of finding that the district court clearly abused its discretion.
'And third, that the district court had accommodated the parties and granted numerous extensions of discovery deadlines makes an abuse-of-discretion finding all the more unsupportable. This court treats as paramount “a trial court’s need to control its docket.” Hamburger v. State Farm Mut. Auto. Ins., 361 F.3d 875, 884 (5th Cir. 2004). Indeed, “[a]dherence to ... scheduling orders [is] critical in maintaining the integrity of judicial proceedings,” and “we are loath to interfere with the court’s enforcement of that order” where the court has not abused its discretion. 1488, Inc. v. Philsec Inv. Corp., 939 F.2d 1281, 1289 (5th Cir. 1991). This case should be no exception. As the district court recounted, it had granted at least six prior motions to extend various deadlines, and it had been “liberal in granting the parties’ prior requests for extensions of deadlines.” Under these circumstances, we should hardly fault the district .court for putting its foot down “less than one month before trial” and “declining] to again amend the Case Management Order and reopen expert testimony.” .The district court made a quintessential discretionary decision to control its docket to which this court must defer.
In light of Bean’s flimsy excuse and a holistic review of the record, I cannot agree that “Bean’s explanation weighs in favor of reversing the district court.” Bean’s proffered explanation goes only to the state of affairs at the time its disclosure deadlines passed, but it does not explain Bean’s failure to seek deadline extensions and otherwise timely disclose Fritsch’s second report. A district court that has accommodated litigants at every turn and declines to do so at the eleventh hour when a litigant has not sought a similar accommodation or disclosed an expert report within a reasonable period of time cannot be said to have clearly abused its discretion. I respectfully dissent.